IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ANASTASIA ZIMMERMAN, ) | |
| ) | No. 2:12-cv-00505-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| COLLEGE OF CHARLESTON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter comes before the court on defendant's motion for judgment on the pleadings. Defendant contends that all of the claims asserted in plaintiff's federal court complaint could have been raised in her pending state court case but were not, and are barred by res judicata. The magistrate judge issued a recommendation that the court deny defendant's motion for judgment on the pleadings. After conducting a de novo review of the pleadings, briefs, and state court record, the court finds that res judicata applies and grants defendant's motion.

## I.  BACKGROUND

Dr. Anastasia Zimmerman is a tenured Assistant Professor at the College of Charleston (the College). On June 13, 2011, she filed an action in state court against the College and Lou Burnett, in his individual capacity. Zimmerman v. Coll. of Charleston, No. 2011-CP-10-4160. In her state court complaint, Zimmerman alleged that Burnett, Director of the Grice Marine Laboratory and Zimmerman's supervisor at the College, acted with hostility towards women and specifically bullied, intimidated, and attempted to harm Zimmerman. State Ct. Compl. ¶¶ 10-11. Zimmerman brought a claim against the College for grossly negligent supervision and against Burnett for defamation.

1

On April 4, 2012, the College moved for summary judgment in state court, arguing that Zimmerman's negligent supervision claim was barred by the South Carolina Workers' Compensation Act and South Carolina Tort Claims Act. The state court entered summary judgment in favor of the College on May 2, 2012, and issued a written order granting summary judgment on May 30, 2012. In its written order, the court first held that Zimmerman's negligent supervision claim was barred by the exclusivity provision of the Workers' Compensation Act because the claim arose out of her employment with the College. Alternatively, the court held that even if Burnett were an "alter-ego" of the College and the College could be held liable for his intentional acts, Zimmerman's negligent supervision claim was barred by the Tort Claims Act. Zimmerman did not file an appeal.

In July 2011, Zimmerman had filed Charges of Discrimination with the South Carolina Human Affairs Commission and U.S. Equal Opportunity Commission. ECF No. 24-4 at 2. On February 7, 2012, the Human Affairs Commission issued a Notice of Right to Sue. ECF No. 27-7 at 2. The EEOC forwarded Zimmermnan's request to the U.S. Department of Justice, which issued a Notice of Right to Sue on May 2, 2012. ECF No. 24-6 at 2; ECF No. 27-9 at 3.

On February 23, 2012, over two months before the state court granted summary judgment to the College, Zimmerman filed the present action against the College in federal court, bringing claims under Title VII of the Civil Rights Act of 1964, as amended, for hostile work environment, discrimination, and retaliation. In her federal complaint, Zimmerman names only the College as a defendant. She alleges the College "has repeatedly over the course of years permitted one of its employees and Plaintiff's

2

supervisor and co-worker, Lou Burnett, to be verbally abusive to women and to act in a discriminatory manner towards women." Fed. Ct. Compl. ¶ 7. Zimmerman claims Burnett has screamed at her, attempted to intimidate her, required her to use a dangerous storage room as a lab, and talked down to her at professional meetings. See id. ¶ 12. According to Zimmerman, the College created a hostile work environment by failing to exercise reasonable care in preventing or correcting Burnett's conduct; discriminated against her by not giving her a lab and requiring her to share space with other professors; and retaliated against her by, *inter alia*, allowing Burnett to file internal grievances against her.

On September 5, 2012, the College filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The College contends that the doctrine of res judicata bars Zimmerman from bringing her Title VII claims in federal court because the claims could have been brought in state court. Def.'s Mem. Supp. Mot. J. on Pleadings 2-3. This matter was referred to the magistrate judge, who issued a Report & Recommendation (R&R) on November 16, 2012, recommending that defendant's motion for judgment on the pleadings be denied because Zimmerman's Title VII claims are not barred by res judicata. The magistrate judge found that the state court's application of the exclusivity provision of the Workers' Compensation Act was a jurisdictional determination that does not carry a preclusive effect. Defendant filed timely objections to the R&R on December 14, 2012.

## II.  STANDARDS

The court is charged with conducting a de novo review of those portions of the R&R to which specific, written objections are made.  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).  The recommendation of the magistrate judge carries no presumptive weight and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

A party may assert the affirmative defense of res judicata on a Rule 12(c) motion for judgment on the pleadings.  See Forty One News, Inc. v. Cnty. of Lake, 491 F.3d 662, 664 (7th Cir. 2007).  In deciding a Rule 12(c) motion, the court must consider the pleadings and may consider matter outside the pleadings by taking judicial notice of facts from a prior judicial proceeding.  See Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000); Briggs v. Newberry Cnty. Sch. Dist., 838 F. Supp. 232, 234 (D.S.C. 1992).

Rule 12(c) motions are decided under the same standard as motions to dismiss under Rule 12(b)(6).  See Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002).  To survive the motion, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  The court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in her favor.  See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

## III. DISCUSSION

Defendant objects to the magistrate judge's recommendation that the state court's grant of summary judgment does not preclude Zimmerman's federal claims.

"'The doctrine of *res adjudicata* (or *res judicata*) in the strict sense of that time-honored Latin phrase had its origin in the principle that it is in the public interest that there should be an end of litigation and that no one should be twice sued for the same cause of action.'" S.C. Dep't of Soc. Servs. v. Basnight, 551 S.E.2d 274, 278 (S.C. Ct. App. 2001) (quoting First Nat'l Bank of Greenville v. U.S. Fid. & Guar. Co., 35 S.E.2d 47, 56 (S.C. 1945)). Res judicata, or claim preclusion, bars litigation of claims that were litigated or *could have* been litigated in an earlier suit. Nevada v. United States, 463 U.S. 110, 130 (1983); Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Comm'n of S.C., 362 S.E.2d 176, 177 (S.C. 1987).

To determine the preclusive effect of a state court judgment, federal courts look to state law. Allen v. McCurry, 449 U.S. 90, 95-96 (1980); Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161-62 (4th Cir. 2008). In South Carolina, res judicata requires proof of three elements: (1) "a final, valid judgment was entered on the merits of the first suit"; (2) "the parties to both suits are the same"; and (3) "the subsequent action involves matters properly included in the first action." Judy v. Judy, 677 S.E.2d 213, 217 (S.C. Ct. App. 2009).

### A. Whether There Was a Final Judgment Entered on the Merits

In the state court case, the Honorable Stephanie P. McDonald, applying South Carolina Rule of Civil Procedure 56(c), "granted summary judgment as to all the causes of action and claims asserted by Zimmerman against the College." ECF No. 36 Ex. B at 4. The South Carolina Supreme Court has held that "summary judgment is an

5

adjudication on the merits of the case." Baird v. Charleston Cnty., 511 S.E.2d 69, 74 (S.C. 1999). A plain reading of the state court's order granting summary judgment engenders a finding that the state court resolved Zimmerman's negligent supervision claim on the merits.

The magistrate judge recommends otherwise. Relying on South Carolina Rule of Civil Procedure 41(b),[1] the magistrate judge found that an application of the exclusivity provision of the Workers' Compensation Act is "necessarily a jurisdictional" rather than a merits determination. R&R 4; see Nilsen v. City of Moss Point, 701 F.2d 556, 562 (5th Cir. 1983) ("[D]ismissals for want of jurisdiction are paradigms of non-merits adjudication."). Because, according to the magistrate judge, the state court did not decide

---

[1] This Rule provides,

**Involuntary Dismissal: Non-suit; Effect Thereof**. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff in an action tried by the court without a jury has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

S.C. R. Civ. P. 41(b). Nowhere in the summary judgment order did the state court rely upon or mention Rule 41. In addition, nowhere did the state court say it was ordering a "dismissal for lack of jurisdiction or for improper venue or for failure to join a party under Rule 19." Instead, the state court relied solely upon Rule 56(c).

Zimmerman's negligent supervision claim on the merits, the magistrate judge recommends that Judge McDonald's summary judgment order cannot carry a preclusive effect.

The exclusivity provision of the Workers' Compensation Act provides that the rights and remedies granted to an employee by the Act "shall exclude all other rights and remedies of such employee . . . as against his employer." S.C. Code Ann. § 42-1-540. Interpreting this provision, the South Carolina Supreme Court has expressly held that "the exclusivity provision does not involve subject matter jurisdiction." Sabb v. S.C. State Univ., 567 S.E.2d 231, 234 (S.C. 2002); see also Cooke v. Palmetto Health Alliance, 624 S.E.2d 439, 442 (S.C. Ct. App. 2005) ("[T]he exclusivity provision of the Workers' Compensation Act does not involve subject matter jurisdiction.").[2] Unlike, for example, a dismissal for want of personal jurisdiction, which "does not operate as an adjudication on the merits," McCray v. Pee Dee Reg. Transp. Auth., 263 F. App'x 301, 304 (4th Cir. 2008) (applying South Carolina law), the state court issued an order granting summary judgment under Rule 56(c), which does operate as an adjudication on the merits. See Adkins v. Allstate Ins. Co., 729 F.2d 974, 976 n.3 (4th Cir. 1984) ("For purposes of *res judicata*, a summary judgment has always been considered a final disposition on the merits."); Machado v. Davis, No. 11-1758, 2012 WL 4051123, at *6 (D.S.C. Sept. 13, 2012) (holding, under South Carolina law, that state court order granting summary judgment "constitute[d] a final judgment for the purpose of res

---

[2] On the contrary, "South Carolina courts have repeatedly held that determination of the employer-employee relationship for workers' compensation purposes is jurisdictional." Glass v. Dow Chem. Co., 482 S.E.2d 49, 51 (S.C. 1997). In Zimmerman's case, the order granting summary judgment was not based on whether Zimmerman is a statutory employee under the Workers' Compensation Act.

judicata"); Toney v. LaSalle Bank Nat'l Ass'n, 896 F. Supp. 2d 455, 475 & n.7 (D.S.C. 2012) (same); contra Shumpert v. Mancor Carolina, Inc., 70 F. App'x 131, 132 (4th Cir. 2003) (noting that state court's "dismissal for lack of jurisdiction . . . does not carry a presumption that the dismissal is an adjudication of the merits of the claim").

Based on the foregoing authority, the court finds that res judicata may attach to the state court's summary judgment order.

Even if application of the exclusivity provision constituted a mere jurisdictional determination, the court would still find that the state court issued a ruling on the merits. This is because the state court additionally held that Zimmerman's claim against the College "is barred, as a matter of law, by the Tort Claims Act." ECF No. 36-2 at 5.

One exception to workers' compensation exclusivity applies "where the injury is not accidental but rather results from the intentional act of the employer or its alter ego." Cason v. Duke Energy Corp., 560 S.E.2d 891, 893 n.2 (S.C. 2002). The state court held that even if Burnett were an "alter-ego" of the College and the College could be sued in tort for his intentional acts, Zimmerman's negligent supervision claim would still be barred by the Tort Claims Act because the Act does not waive immunity for intentional acts. South Carolina courts have held that immunity is an affirmative defense that must be proven by the defendant. See, e.g., Frazier v. Badger, 603 S.E.2d 587, 590 (S.C. 2004). Therefore, the state court's finding of immunity operates as an adjudication on the merits. See Brandt v. Gooding, 630 S.E.2d 259, 262 (S.C. 2006) (holding that because a trial court considering a motion for summary judgment examines both law and facts, the grant of summary judgment constitutes "the final determination of all the issues that exist between the parties").

For these reasons, the court finds there was a final judgment entered on the merits.[3]

### B.  Whether There is Identity of Parties

The parties do not dispute that identity of parties is satisfied.  The fact that an additional defendant was named in the state court action does not preclude application of res judicata in the present action.  See Hall v. St. Mary's Seminary & Univ., 608 F. Supp. 2d 679, 685 & n.4 (D. Md. 2009).

### C.  Whether the Subsequent Action Involves Matters Properly Included in the State Court Action

The remaining dispute is whether Zimmerman could and should have raised her Title VII claims in state court.

South Carolina courts use various tests in determining whether a claim should have been raised in a prior suit, such as:  (1) "when there is identity of the subject matter in both cases"; (2) "where the cases involve the same primary right held by the plaintiff and one primary wrong committed by the defendant"; (3) "when there is the same evidence in both cases"; and (4) "when the claims arise out of the same transaction or occurrence."  Plum Creek Dev. Co. v. City of Conway, 512 S.E.2d 106, 109 n.3 (S.C. 1999).  In Judy v. Judy, 712 S.E.2d 408 (S.C. 2011), the South Carolina Supreme Court declined to adopt a single test and instead reiterated that "'[r]es judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties.'"  Id. at 414 (quoting Plum Creek, 512 S.E.2d at 109).  "[S]imply seeking a different remedy in the

---

[3] Because the magistrate judge only issued a recommendation on this element of res judicata, and the court disagrees with that recommendation, the court must respectfully reject the magistrate judge's well-written R&R.

9

second lawsuit for the same cause of action does not negate the identical nature of the subjects of the two actions." Id. (citing Plum Creek, 512 S.E.2d at 109 n.4).

Applying this framework, the court finds that Zimmerman could and should have brought her Title VII claims in state court. First, there was no statutory barrier to bringing the Title VII claims in state court, as plaintiff admits. See Yellow Freight Sys. Inc. v. Donnelly, 494 U.S. 820, 823 (1990) (noting that Congress did not give federal courts exclusive jurisdiction over Title VII claims); Pl.'s Resp. Opp'n 2 n.1 ("Though Plaintiff could have amended her state complaint to add her Title VII cause of action once she received the [Human Affairs Commission] right to sue letter, she chose to bring her Title VII claim in federal court.").

Second, there was no procedural barrier to bringing the Title VII claims in state court. Zimmerman received her right to sue letter from the Human Affairs Commission on February 7, 2012, almost three months before the state court granted the College's motion for summary judgment. As such, Zimmerman had ample time to amend her state court complaint to assert causes of action under Title VII. Cf. Machado, No. 11-1758, 2012 WL 4051123, at *8 ("After Plaintiff received his right-to-sue letter from SHAC . . ., the state court had jurisdiction to hear Plaintiff's race discrimination claim. At that point, Plaintiff could have, and should have, asserted the claim."). Although Zimmerman did not receive her Notice of Right to Sue from the Department of Justice until May 2, 2012, the date the state court granted summary judgment, Zimmerman had already filed her federal complaint nearly four months prior. Thus, the notice had no bearing on when Zimmerman could have raised her Title VII claims. See O'Grady v. MCI Telecomms.

Corp., 103 F.3d 119 (4th Cir. 1996) (applying res judicata although right to sue letter had not been received from EEOC).[4]

Third, the federal claims arise out of the same transaction or occurrence that was the subject of the state court action. Both cases plainly arise out of the College's alleged failure to adequately supervise and control the conduct of one of its employees. Compare, e.g., State Ct. Compl. ¶¶ 10, 12, with Fed. Ct. Compl. ¶ 7 (similar allegations that the College has for years permitted Lou Burnett to be abusive and hostile towards women); State Ct. Compl. ¶ 11 with Fed. Ct. Compl. ¶¶ 12, 32 (similar allegations that Burnett moved plaintiff's lab to an unsafe storage room); State Ct. Compl. ¶ 15 with Fed. Ct. Compl. ¶¶ 15, 22 (similar allegations that the College has ignored Zimmerman's complaints about Burnett and refused to investigate them).[5] See Machado, No. 11-1758, 2012 WL 4051123, at *8 (holding that identity of subject matter existed where both lawsuits concerned plaintiff's belief he was treated unfairly during his employment and termination). Finally, the same primary right and wrong were allegedly held by plaintiff and committed by defendant. Compare State Ct. Compl. ¶ 13 (alleging that College owed duty not to allow Burnett to bully women) with Fed. Ct. Compl. ¶ 24 (alleging that the College owed duty to exercise reasonable care in preventing gender discrimination).

---

[4] Even if Zimmerman's claims hinged on receipt of the notice, res judicata would still apply because she could have sought to stay the state court proceedings. See Hermann v. Cencom Cable Assocs., Inc., 999 F.2d 223, 225 (7th Cir. 1993) ("[T]he employee can sue on his other claims, ask the court . . . to stay the proceedings until the Title VII administrative process is complete, and then if the process does not end in a way that satisfies him amend his complaint to add a Title VII count."); Woods v. Dunlop Tire Corp., 972 F.2d 36, 37-41 (2d Cir. 1992).

[5] Any additional facts raised in the federal court complaint could have been asserted in the state court complaint, as they existed prior to the time the state court granted summary judgment. See Hall, 868 F. Supp. 2d at 686.

For these reasons, the court finds that Zimmerman had a "full and fair opportunity to litigate [her] claim[s]" in the prior action. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 480 (1982) (internal quotation marks omitted). This decision finds ample support in the case law. See, e.g., Ford v. Georgetown Cnty. Water & Sewer Dist., 67 F. App'x 188, 190 n.1 (4th Cir. 2003) (noting that res judicata applies even where "the federal litigation differs from the state litigation" so long as the federal claims could have been raised before the state court but were not); Sheppard v. CIH Ventures, Inc., No. 96-2073, 1997 WL 358764 (4th Cir. June 30, 1997) (applying res judicata to Title VII claims raised in federal court where state court claims were dismissed for failure to prosecute); Allen v. Greenville Cnty., 712 F.2d 934, 935 (4th Cir. 1983) (applying South Carolina law and holding that plaintiff who lost claim for wrongful termination of contract in state court was properly barred from raising § 1983 claim that contract was terminated for racially discriminatory reasons in federal court). Furthermore, this decision is reinforced by the state court's order granting summary judgment "as to *all* the causes of action and claims asserted by Zimmerman against the College." ECF No. 36 Ex. B at 4 (emphasis added).

In summary, the court finds that res judicata bars Zimmerman from bringing Title VII claims that could and should have been brought in her state court action.

## IV.   CONCLUSION

For the reasons set forth above, the court **REJECTS** the magistrate judge's R&R and **GRANTS** defendant's motion for judgment on the pleadings.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 26, 2013**
**Charleston, South Carolina**